UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RICKY DALE ADKINS,** | ) |
| | ) |
|    Petitioner, | ) |
| | ) |
| vs. | )    CASE NO. 4:06-CV-4666-SLB |
| | ) |
| **GRANT CULLIVER, Warden;** | ) |
| **RICHARD F. ALLEN, Commissioner,** | ) |
| **Alabama Department of Corrections,** | ) |
| | ) |
|    **Respondents.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on petitioner's Objections to the Magistrate Judge's Report and Recommendation. (Doc. 28.)[1] Upon consideration of the record, the Report and Recommendation, Adkins's Objections, and the relevant law, the court is of the opinion that Adkins's Objections are due to be overruled, the Report adopted, with the modifications set forth below, and the Recommendation accepted.

Adkins objects to the Magistrate Judge's Report and Recommendation on the following grounds:

    I. The state unconstitutionally exercised its peremptory challenges by striking African-American jurors on the basis of their race.

    II. Petitioner was denied a fair and impartial judge due to judicial conflict of interest and the appearance of impropriety.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

> III. Trial counsel rendered ineffective assistance during the penalty phase and guilt phase of trial as well as during pre-trial litigation.
>
> IV. The trial court's jury instruction regarding reasonable doubt was improper and unconstitutional.

The court, after careful and searching review of the record and in consideration of the Magistrate Judge's comprehensive discussion of the issues, finds only issues I and II of Adkins's objections merit further discussion.

### A. THE STATE UNCONSTITUTIONALLY EXERCISED ITS PEREMPTORY CHALLENGES BY STRIKING AFRICAN-AMERICAN JURORS ON THE BASIS OF THEIR RACE.

The Supreme Court has established a "three-step inquiry" for evaluating "defendant's *Batson* challenge to a peremptory strike." *Rice v. Collins*, 546 U.S. 333, 338 (2006).

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Rice*, 546 U.S. at 338 (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995); citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986))(internal quotations and citations omitted). Petitioner contends, "Both the Alabama Court of Criminal Appeals and the Magistrate Judge ended their analysis at step two of the *Batson* inquiry." (Doc. 28 at 3.) The court disagrees.

The trial court specifically found "no purposeful racial discrimination in the [peremptory] strikes exercised by the State as to Billy Morris, or any other black juror struck." (Vol. 8, Tab 27 at 48-49.)  The opinion of the Alabama Court of Criminal Appeals found, expressly, that the trial court had gone "to great lengths to determine the *motive* behind each strike" and accorded that finding the deference it deserved.  *Adkins v. State*, 639 So. 2d 515, 519 (Cr. App. 1993)(emphasis added), *aff'd* 639 So. 2d 522 (Ala.), *cert. denied* 513 U.S. 851 (1994).  Likewise, the Magistrate Judge correctly set forth the applicable law for step three, but erroneously referred to it as step two. (Doc. 26 at 61.)  He stated, "The proper focus required by *step two* is of the genuineness of the motive rather than the reasonableness of the asserted nonracial motive. (*Id*. [citing *Purkett*, 514 U.S. at 768-69](emphasis added).)  However, he clearly recognized that the question at step three is the "genuineness" of the prosecutor's motive. (*See id*. at 62 ["At step three, it was for the court to determine whether the prosecutor struck Morris because he believed him to be single."].)  In *Purkett*, the Supreme Court held:

> The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson*, supra, 476 U.S., at 98, n. 20, 106 S. Ct., at 1724, n. 20 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981)), and that the reason must be "related to the particular case to be tried," 476 U.S., at 98, 106 S. Ct., at 1724.  *See* [*Elem v. Purkett*,] 25 F.3d [679,] 682, 683 [(8th Cir. 1994)].  This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith.  What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal

3

protection. See *Hernandez* [*v. New York*], [500 U.S. 352,] 359, 111 S. Ct. [1859,] 1866[, 114 L. Ed. 2d 395 (1991)(plurality opinion)]; cf. *Burdine*, *supra*, at 255, 101 S. Ct., at 1094 ("The explanation provided must be legally sufficient to justify a judgment for the defendant").

The prosecutor's proffered explanation in this case – that he struck juror number 22 because he had long, unkempt hair, a mustache, and a beard – is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike. . . . Thus, the inquiry properly proceeded to step three, where the state court found that the prosecutor was not motivated by discriminatory intent.

In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). See *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S. Ct. 843, 849, 74 L. Ed. 2d 646 (1983). Here the Court of Appeals did not conclude or even attempt to conclude that the state court's finding of no racial motive was not fairly supported by the record. For its whole focus was upon the ***reasonableness*** of the asserted nonracial motive (which it thought required by step two) rather than the ***genuineness*** of the motive. It gave no proper basis for overturning the state court's finding of no racial motive, a finding which turned primarily on an assessment of credibility, see *Batson*, 476 U.S., at 98, n.21, 106 S. Ct., at 1724, n.21. Cf. *Marshall*, *supra*, at 434, 103 S. Ct., at 850.

*Purkett*, 514 U.S. at 768-69.

The court finds petitioner's objection to the Report and Recommendation on the ground that "[b]oth the Alabama Court of Criminal Appeals and the Magistrate Judge ended their analysis at step two of the *Batson* inquiry," (doc. 28 at 3), is not well taken.

Adkins also argues that "the totality of the evidence established discrimination by the prosecution in its use of peremptory strikes." (*Id*. at 4.) He contends that the Alabama Court of Criminal Appeals and the Magistrate Judge failed to consider "all relevant circumstances," and only evaluated the prosecutor's "reasons in isolation as to their facial race neutrality."

4

(*Id*. at 15.)  He argues the "relevant circumstances" include the statistical improbability of "striking of 82% of the black jurors" for race-neutral reasons; "the lack of record support for the prosecution's proffered reasons for some of the strikes[;]  the prosecution's acceptance of white prospective jurors sharing the same characteristics of blacks who were struck[;] the weakness and vague nature of the reasons proffered, the prosecution's failure to question some black jurors regarding the reasons it gave for striking them[;] and the clear consciousness throughout the prosecution's notes regarding the race of only the black veniremembers."  (*Id*. at 2.)

Because this issue is before the court on a Petition for Writ of Habeas Corpus, the court's review of the trial court's finding is deferential:

> On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error.  Under AEDPA, however, a federal habeas court must find the state-court conclusion an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Thus, a federal habeas court can only grant [the habeas] petition if it was ***unreasonable*** to credit the prosecutor's race-neutral explanations for the *Batson* challenge.  State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence.

*Rice*, 546 U.S. at 338-39 (internal citations and quotations omitted).  Although "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility," this court may not grant relief unless it determines "that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications and conclude [Adkins] had shown a *Batson* violation."  *Id.* at 341-42.

5

The ultimate question is whether the prosecutor exercised his peremptory challenges to strike African-Americans based on their race. The fact that the prosecutor's reasons for exercising his strikes are "unpersuasive, or even obviously contrived, does not necessarily establish that [Adkins's] proffered reason [for the strikes – race discrimination –] is correct." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000)(internal quotations and citations omitted), *cited in Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). Finding that the prosecutor was wrong about the factual basis for his strike does not equate to a finding that the prosecutor has lied about his reason for exercising the strike to cover up the fact that his genuine motivating factor was race. *Rice*, 546 U.S. at 338; *see also Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.")(internal quotations and citations omitted).

The prosecutor testified as to his reasons for striking the African-Americans. These reasons are set forth and discussed in the trial court's Order, (doc. 28, Tab 27 at 44-49), the opinion of the Alabama Court of Criminal Appeals, *Adkins*, 639 So. 2d at 517-20, and the Report and Recommendation, (doc. 26 at 57-78.) Also, the trial court found that the prosecutor had "never intentionally misrepresented any fact to this court to gain an advantage in a criminal proceeding," and that he had actually "admitted facts which were to the

6

detriment of his cases" on many occasions.[2] (Vol. 8, Tab 27 at 48.) The Alabama Court of Criminal Appeals specifically stated that "the St. Clair County District Attorney's office does not have a history of discriminatory striking." *Adkins*, 639 So. 2d at 518. Adkins has presented nothing to rebut these findings or to otherwise show the state court's assessment of the prosecutor's history was unreasonable.

Although the evidence does not compel a finding that the prosecutor exercised his peremptory strikes without any racial motivation and reasonable minds might differ, the evidence in the record is legally sufficient to support the trial court's finding of no *Batson* violation. This court finds that Adkins has not demonstrated "clear and convincing evidence" that the trial court's finding – that the prosecutor did not strike these jurors because of their race – is unreasonable in light of the evidence presented to the trial court. Adkins's objections to the Magistrate Judge's Report and Recommendation are overruled.

---

[2]Adkins argues that the trial court "could not use his personal experience or relationship with the District Attorney outside of the context of this case to determine whether the prosecutor intended to discriminate in striking nine of the eleven black prospective jurors." (Doc. 28 at 9.) The Supreme Court has held, "The case for discrimination goes beyond . . . comparisons [of the jurors] to include broader patterns of practice during the jury selection." *Miller-El v. Dretke*, 545 U.S. 231, 253 (2005). Evidence of historical practices designed to reduce or eliminate minorities in the venire can be considered by the trial court when deciding the issue of the prosecutor's credibility. *Id*. (In addition to the side-by-side comparison of the jurors, the Court considered the "prosecution's shuffling of the venire panel, its enquiry into views on the death penalty, its questioning about minimum acceptable sentences," and "widely known evidence of the general policy of the Dallas County District Attorney's Office to exclude black venire members from juries at the time Miller-El's jury was selected.").

**B.  PETITIONER WAS DENIED A FAIR AND IMPARTIAL JUDGE DUE TO JUDICIAL CONFLICT OF INTEREST AND THE APPEARANCE OF IMPROPRIETY.**

Adkins argues that the Magistrate Judge erred in holding, "There is no Supreme Court decision clearly establishing that an appearance of bias or partiality, where there is no actual bias, violates the Due Process Clause or any other constitutional provision." (Doc. 28 at 24-25 [quoting doc. 28 at 94].)  Moreover, he argues, "Because it is well-established as a matter of Supreme Court jurisprudence that proof of actual bias is not required to establish a due process violation where an objective inquiry establishes a 'serious appearance of impropriety' or a 'probability of bias' on the part of a judge, Mr. Adkins objects to the Magistrate Judge's failure to address and analyze his claim by applying the appropriate constitutional standard."  (*Id*. at 25.)

Adkins alleges that he was denied his constitutional rights to fair proceedings, due process, and a neutral and impartial judicial officer because the trial judge had a "personal and political interest in winning the election for circuit judge[,] which took place just two weeks after trial[, that] made it impossible for him to give, or appear to give, fair and impartial consideration to the issues presented to him for ruling before and during Mr. Adkins's trial."  (Doc. 1 ¶ 81.)  The Magistrate Judge held:

> There is no Supreme Court decision clearly establishing that an appearance of bias or partiality, where there is no actual bias, violates the Due Process Clause or any other constitutional provision.  Further, there is no United State Supreme Court precedent clearly establishing that campaigning for a judicial office may give rise to actual bias in a criminal case which would violate Adkins'[s] due process rights.  There is no evidence that counsel for

Adkins was involved in a running controversy with Judge Austin. Neither defense counsel nor the judge made personal attacks against the other. There is no evidence in the record that Judge Austin's attitude or demeanor toward the defense was either inappropriate or hostile. Judge Austin's campaigning for election while presiding over Adkins'[s] capital case did not violate Adkins'[s] right to due process.

The denial of Adkins'[s] claim of judicial bias was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court nor were the decisions based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Adkins is not entitled to habeas relief on this claim.

(Doc. 28 at 94.) The Alabama Court of Criminal Appeals has rejected Adkins's argument. *See Adkins v. State*, 600 So. 2d 1054, 1062-63 (Ala. Cr. App. 1990).

The court addresses this objection because Adkins is correct that he does not have to establish actual bias to establish a constitutional violation based on a trial judge's failure to recuse. (Doc. 28 at 25-28 [citing, *inter alia*, *Caperton v. A.T. Massey Coal Co., Inc.*, ___ U.S. ___, 129 S. Ct. 2252, 2263 (2009)].)[3] However, the exceptions to the rule requiring a

---

[3]The Court in *Caperton* held:

"[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias. See *Tumey* [*v. Ohio*], 273 U.S. [510,] 532, 47 S. Ct. 437 [(1927)]; *Mayberry* [*v. Pennsylvania*,] 400 U.S. [455,] 465-66, 91 S. Ct. 499 [(1971)];[ *Aetna Life Ins. Co. v.*] *Lavoie*, 475 U.S. [813,] at 825, 106 S. Ct. 1580 [(1986)]. In defining these standards the Court has asked whether, "under a realistic appraisal of psychological tendencies and human weakness," the interest "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow* [*v. Larkin*], 421 U.S. [35,] 47, 95 S. Ct. 1456 [(1975)].

showing of actual bias are very limited and do not apply to Adkins's claims. *See Caperton*, 129 S. Ct. at 2263-64 (Court found due process violation, without finding actual bias, when "there is a serious risk of actual bias – based on objective and reasonable perceptions – when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent."); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975)("In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.")(internal citations and footnotes omitted).

Adkins complains about bias, or the appearance of bias, arising from the fact that the trial judge was involved in an election campaign during his trial; he argues, "[T]he close temporal relationship between the imminent judicial election and Judge Austin's abrupt assignment to a highly publicized case in which he had no prior involvement gives rise, at a minimum, to an appearance of impropriety." (Doc. 28 at 37.)

In addressing this issue, the Alabama Court of Criminal Appeals held:

> The appellant next argues that the trial judge erred in failing to recuse himself from the proceedings. Prior to the trial in the instant case the presiding circuit judge of St. Clair County appointed Judge Robert Austin, a district judge, to try this case. Appellant contended at trial that this appointment,

provided for by Rule 13 of the Alabama Rules of Judicial Administration, violated the Alabama Constitution. He also argued that Judge Austin should have recused himself since he was at the time campaigning for a seat on the circuit court. We do not agree.

Rule 13(A), Rules of Judicial Administration, states: "The presiding circuit judge may temporarily assign circuit or district court judges to serve either within the circuit or in district courts within the circuit." Our Supreme Court has upheld the constitutionality of this Rule. *See State ex rel. Locke v. Sweeney*, 349 So. 2d 1147 (Ala. 1977). As our Supreme Court stated in that case, the only limitation on rulemaking allowed under the Judicial Article is that rules " 'shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts . . .' or venue, or jury trial." *Sweeney*, 349 So. 2d at 1148 (quoting amend. 328, § 6.11, Ala. Const. 1901). The temporary assignment of a district judge to the circuit court of the same county in no way violates this limitation. *See Sweeney*, *id*.

The appellant also argues that Judge Austin should have recused himself from the case since the election for the circuit judge position for which he was temporarily appointed was several weeks away and that fact, the appellant argues, could have affected the way he conducted the trial in the instant case.

When arguing in support of the motion, Mr. Barrett stated:

"Of most concern, Your Honor, is in the unlikely event that a jury should convict Mr. Adkins of the crime of capital murder, and pass a recommendation of life in prison without parole, His Honor may be called upon-in a sentencing hearing to pass upon the jury's recommendation, either to accept it or reject it and impose the electric chair on Mr. Adkins."

Canon 3C, Alabama Canons of Judicial Ethics, states:

"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:

>>"(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
>>"(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it."

As this court restated in *McMurphy v. State*, 455 So. 2d 924 (Ala. Cr. App. 1984): "The general rule in Alabama is that there is a presumption that a judge is qualified and unbiased and a person who alleges otherwise has the burden of proving that grounds for his allegation." *McMurphy*, 455 So. 2d at 929. A reasonable man standard is used when evaluating whether a judge should recuse himself from a certain case. *See United States v. Holland*, 655 F.2d 44 (5th Cir. 1981). "[A] judge should disqualify himself '[w]here he has a personal bias or prejudice concerning a party . . . .' The general rule is that bias sufficient to disqualify a judge must stem from an extrajudicial source." *Holland*, 655 F.2d at 47. Review on appeal of a motion for recusal will not be reversed unless clear evidence of bias is shown. *See Slinker v. State*, 344 So. 2d 1264, 1268 (Ala. Cr. App. 1977).

As the United States Supreme Court stated in *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S. Ct. 1580, 1585, 89 L. Ed. 2d 823 (1986): "'The law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.'"

After a review of the record, we see no indication that the appellant was prejudiced in any way by Judge Austin's presiding over the trial. It would be unreasonable to hold that Judge Austin should have recused himself. This would imply that every time a judge was up for reelection or election to a different judgeship he would have to recuse himself from any publicized case directly prior to the election. To hold so here "would lead to judicial abandonment of responsibility for the purity of the judicial process and ultimately undermine the independence and integrity of the courts." *United States v. Alabama*, 582 F. Supp. 1197, 1208 (N.D. Ala. 1984), *aff'd*, 762 F.2d 1021 (11th Cir. 1985). Judge Austin committed no error in failing to recuse himself from this case.

>The appellant also argued that since the trial judge denied his motion for a continuance he has shown his bias in this case. Adverse rulings are not, standing alone, sufficient to show that a judge is biased or prejudiced and should have recused himself. *See Banks v. Corte*, 521 So. 2d 960, 962 (Ala. 1988), *Matter of Sheffield*, 465 So. 2d 350, 357 (Ala. 1984).

*Adkins v. State*, 600 So. 2d at 1061-63.

The Supreme Court has never held that a judge, running for reelection or election to a new seat, must recuse from high profile cases or refrain from political speech or activity. Indeed, the Supreme Court has held, in dicta, that the Due Process Clause is not violated when "a judge [sits on] a case in which ruling one way rather than another increases his prospects for reelection [of election to another seat]." *Republican Party of Minnesota v. White*, 536 U.S. 765, 782-83 (2002)(internal citations omitted).

The court finds that the decision of the Alabama state court – that the trial judge committed no error in failing to recuse – is a reasonable determination of the facts in light of the record evidence. Moreover, the court finds that the state court's decision is not contrary to nor does it involve an unreasonable application of clearly established Federal law as determined by the Supreme Court. Adkins's Objections are overruled.

## C. OTHER GROUNDS

After careful consideration of the record in this case, the Magistrate Judge's Report and Recommendation, and Adkins's Objections thereto, the court finds no grounds for disturbing the Report and Recommendation as to Adkins's remaining issues.

## CONCLUSION

Based on the foregoing, the court hereby adopts the Report and accepts the recommendations of the Magistrate Judge that the petition for writ of habeas corpus be denied. A separate Final Judgment will be entered contemporaneously herewith.

**DONE**, this 30th day of March, 2010.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE